## HALSTEAD vs. THE MAYOR, &c. OF NEW-YORK.

Under an act passed in May, 1840, associate judges of the court of general sessions of the city and county of New-York were appointed.  By another act passed in May, 1841, the salaries of such judges was made a county charge, and the supervisors were directed to audit and allow them.  This they refused to do, on the ground of the unconstitutionality of the former act, and separate suits were thereupon brought against them to recover the penalty provided by law for neglect of duty.  The act of 1840 was subsequently adjudged to be unconstitutional, and then the corporation of the city assumed the defence of the suits.  After judgments had been recovered against the supervisors, they assumed the payment thereof with the costs of the defence, and for such costs, drew drafts upon the treasurer of the city.  *Held*, that the corporation had no power to assume the defence of the suits, or the payment of the judgments and costs, and therefore that the drafts were void.

The powers of municipal corporations considered and discussed.

THIS was an action brought in the supreme court by David P. Halstead, against the mayor, aldermen and commonalty of the city of New-York, to recover the amount of two drafts drawn by the defendants upon the treasurer of the city, payable to P. A. Cowdrey, Esq. and endorsed to the plaintiff. One of the drafts was dated May 10, 1847, for the sum of $2661,27, and on its face purported to be for "defendant's cost in the case of R. H. Morris and eight others, former supervisors." The other was dated May 11, 1847, for $300 and purported to be for "counsel fees," in the same matter. On the trial before EDWARDS, J. in January, 1849, the drafts, after proof of due presentment, protest and notice, were read in evidence.

On the part of the defendants, it was proved that in or about September, 1841, separate suits were commenced in the name of the people of the state of New-York on the relation of James Lynch against Robert H. Morris and eight others, supervisors of the city and county of New-York, to recover from each of them, a penalty of $250 for neglecting and refusing to audit and allow the account of Lynch as one of the associate judges of the court of general sessions of said city, according to the requirement of the "act to enable the supervisors of the city and county of New-York to raise money by tax," passed May 26, 1841. (Stat. p. 267.) The fourth section of that act declares that the arrears of the salary of the said associate judges and their salaries thereafter to become due, by virtue of an "act for the better organization of criminal courts in the city and county of New-York," passed May 14, 1840, should be deemed county charges, and directs the supervisors to audit and allow the account for such arrears on or before the 10th day of July then next, and thereafter quarterly as such salaries might become due. James Lynch was appointed associate judge under the said act of May 14, 1840. In June, 1841, his claim for one year's salary was before the supervisors, and they refused to audit it on the ground that the act of 1840 was unconstitutionally passed; and for that refusal, he brought the suits before mentioned under the statute (1 R. S. 368, § 16) which imposes a penalty of $250 upon every supervisor neglecting or refusing

to perform any of the duties required of him by law as a member of the board of supervisors.

On the 26th of January, 1846, while those suits were pending in the court for the correction of errors, and before the argument, the common council passed a resolution which, after reciting that the supervisors in refusing to audit the salary until the constitutionality of the act of 1840 should be settled, acted in the conscientious discharge of their duty, and further reciting that the supervisors had been sustained in their opinion of the unconstitutionality of the law by the decision of the court of errors, (*see* 4 *Hill*, 384,) declared, that the corporation of the city would defend the said supervisors in the further prosecution of the suits for the penalties, and directed the counsel of the corporation to aid in the argument thereof. On the 8th of May, 1847, the common council passed another resolution, directing the payment of the judgments recovered against the supervisors in those suits, together with their taxable costs and reasonable counsel fees incurred in the defence of the suits. In pursuance of that resolution the drafts in question were drawn upon the treasurer. The treasury of the city, over which the common council has control, and the treasury of the county under the government of the supervisors, are one and the same, there being but one treasurer.

Upon these facts, Justice Edwards charged the jury that the drafts were void, and that, although the plaintiff was a *bona fide* holder without notice of the consideration, he was not entitled to recover. A verdict was accordingly had for the defendants, which the supreme court refused to set aside, and after judgment, the plaintiff appealed to this court.

*P. A. Cowdrey*, for appellant.

*H. E. Davies*, for respondents.

Pratt, J. There was no objection in this case to the form of the drafts, and the counsel for the plaintiff waived upon the argument the point which had been raised below in relation to

the rights of a bona fide holder of a draft of this character. The simple question is therefore presented for our consideration, whether the common council of the city were authorized to assume the payment of the penalties, with the costs and expenses of the litigation, to which certain supervisors of the city and county of New-York had been subjected for an alledged neglect of official duty.

Chancellor Kent, in his Commentaries, says that the modern doctrine is to consider corporations as having such powers as are specifically granted by the act of incorporation, or as are necessary for the purpose of carrying into effect the powers expressly granted, and as not having any other. (2 *Kent's Com.* 298.) "A municipal corporation," says Willcock, "has at common law few powers beyond those of electing, governing and removing its members, and regulating its franchises and property. The power of its governing officers can only extend to the administration of the by-laws and other ordinances by which the body is regulated." (*Willcock on Mun. Corp. tit.* 769.) By our statute, the powers of corporations are expressly limited to those specified in the statute of the state, and those conferred by their charters. (1 *R. S.* 600.) These principles are so obviously in accordance with the end and object of the creation of this class of governmental agencies that their correctness must be recognized and acknowledged by every one, and yet if we were to judge from the conduct of municipal corporations alone, we would conclude that there was no limitation of their powers, at least of their power of levying taxes. Until the case of *Hodges* v. *The City of Buffalo*, (2 *Denio*, 110,) nothing was more frequent than for city authorities to vote largesses and give splendid banquets for objects and purposes having no possible connection with the growth or weal of the body politic, thus subjecting their constituents to unnecessary and oppressive taxation. Since the decision in that case the principle has been more generally recognized and acted upon that these corporations are creatures of limited powers, especially upon the subject of the appropriation of the funds of the people. Within the principles of that decision, based as they are upon the statute,

and the principles above cited from the elementary writers, it is difficult to find any power or authority in the common council of the city of New-York to pass the resolution of May 8, 1847, under which the drafts in suit were issued.

It would scarcely seem necessary to do more than state the facts in this case. The general statute of the state provides that " If any supervisor shall neglect or refuse to perform any of the duties which are or shall be required of him by law as a member of the board of supervisors, he shall for every such offence forfeit the sum of two hundred and fifty dollars." (1 *R. S.* 368, § 16.) By an act of the legislature passed May 26, 1841, (*Ses. L. p.* 267,) the supervisors of the city and county of New-York were required to audit and allow an account for the salary of Judge Lynch as judge of the court of sessions in that city. For neglecting and refusing to obey this law, penalties were recovered against several of them, and the common council by that resolution assume the payment of the penalties, with the costs of litigation. In short, the statute of the state to secure a due discharge of official duty makes every supervisor subject to a penalty of two hundred and fifty dollars for any neglect of such duty. Certain supervisors of the city and county of New-York had been convicted of such neglect of duty, and judgment had passed against them severally for such penalties. The common council do not attempt directly to reverse or nullify the decision of the court in that respect, but they do that which is the same in effect, and surely quite as objectionable in its practical tendency—they transfer the payment of the penalty, with the costs, from the guilty parties to the tax-payers of the city. If the common council is invested with a power of this magnitude—a power which, in its practical results, can set the laws of the state and the decisions of the courts at defiance—then it must be confessed that there is scarcely any limitation to the powers of municipal corporations.

What are the grounds upon which this extraordinary exercise of power is claimed to rest ? It was placed by the counsel for the plaintiff mainly upon the assumption that the city had an interest in the event of the suit, or at least in the question

involved in the case. There are several answers to this position.

First. It is manifest that the city had no interest in the event of the suit, at least in favor of the supervisors. A judgment in those suits could not possibly effect the corporate rights of the city. Nor was the city interested in the question. The right of Judge Lynch to sit in the court of sessions was not involved in the case. Indeed the decision of the court for the correction of errors, in sustaining the decision of the supreme court, establishing the liability of the supervisors, was placed expressly upon the ground that his right to sit in the court was not involved in the case. Nor was his right to receive the salary involved in the case. The duty of the supervisors was under the act of 1841, simply ministerial, and it was for refusing to obey the requirements of that act that they were prosecuted. These suits therefore could not involve the questions that grew out of the alledged unconstitutionality of the act of 1840. Besides, it would be a dangerous power to be vested in municipal corporations which would give them the right to employ counsel and defend every suit which might present a question, in the decision of which the agents of such corporations might fancy themselves interested. In this case the city had already taken a much more direct and unobjectionable method of testing the constitutionality of the act of 1840, and there is no evidence to show that the city took any part in the defence of these actions until the act of 1840 had been adjudged unconstitutional by the court of last resort. That decision was made in December, 1842, (*see* 4 *Hill*, 384,) and the resolution directing the defence of these actions was passed January 26, 1846. Indeed the defence was assumed, upon one ground among others, that the act had been declared unconstitutional by the courts.

Secondly. It is claimed that the common council was interested in preventing the payment of the salary, and thus guarding the common treasury. As I have said before, the right to the salary was not involved. If Judge Lynch was not entitled to the salary the treasurer of the city was not bound to pay, notwithstanding the same had been audited. (1 *Hill*, 244.)

But there are other objections. The board of supervisors and the common council are, in theory, two separate and independent bodies, responsible it is true, to a common constituency, but in no sense the agents of or responsible to each other. The fact that in the city of New-York the two bodies are composed principally of the same persons, can not change the relation which they sustain to each other. In every city in the state the action of the board of supervisors of the county in which such city is located may affect materially the interests of the people of such city, yet that consideration would by no means authorize the agents of the city to interfere and attempt to influence them in the discharge of their official duties, or assume the payment of penalties which the law had imposed upon them for their neglect of those duties. There is an obvious principle of public policy which forbids it. The supervisors are responsible to the law and the people whom they represent, for the due discharge of the duties imposed upon them. The object of the statute in imposing the penalty was to protect the people against the consequences of official delinquency ; but if those penalties can be transferred from the delinquent to the people themselves, who may have been the sufferers by such delinquencies, by the fiat of a common council, the law is worse than useless. Such a doctrine would be startling in its application to the city of New-York, for there both bodies being composed of the same individuals, it would be very difficult to enforce the law in any case. For it is only when a majority of the board of supervisors are guilty of neglect that any injury can be sustained, and in such case it would always be in their power, acting as a common council, to pass the burden from themselves to the city. It would seem to be a more direct method and no more objectionable for them in the capacity of a board of supervisors to audit such penalties directly as a legal charge against the county.

Thirdly. The resolution assuming the defence of the suits is not based upon the assumption that the city had any interest either in the event of the suits or the questions involved. The preamble places the action of the common council upon the assumption that the supervisors, in refusing to obey the act of

Halstead *v.* The Mayor, &c. of New-York.

1841, acted conscientiously, and that they had been sustained in their opinion that the act of 1840 was unconstitutional, by the court for the correction of errors. There is no pretence here that the defence was assumed for the purpose of protecting the corporate rights or the treasury of the city; and clearly the ground upon which the defence was assumed is no justification. If the common council meant to concede the delinquency of the supervisors, but to shield them from the consequences because they had committed the wrong conscientiously, they were simply attempting to nullify the statute. But if they meant to assume that having acted conscientiously was a good defence, they were simply assuming to decide the very question which was then pending in the courts. In either view it is submitted that the common council were exceeding their powers. It will not be urged that they were authorized to attempt to nullify the law, and it is somewhat difficult to perceive how the city could be interested in the latter question. If the supervisors were not in fact guilty of a breach of the law, they were probably quite competent to defend themselves. At least there is no proof showing any necessity for assistance from the city, and after the decision of the court of last resort sustaining the liability of the supervisors, all questions of that character were settled. There was then at least no excuse for assuming the payment of the penalties and the costs which had accrued, as well before as after the defence was assumed.

It was claimed to be a debatable question whether the legislature had the power to pass the act of 1841, making the salary of Judge Lynch, who had actually discharged the duties, a charge upon the city, and yet it is claimed that the common council had authority to charge upon the city the penalties which officers had incurred for neglecting to discharge their duties. The proposition is simply preposterous. It was held in the *People* v. *Lawrence,* (6 *Hill,* 244,) that the supervisors of a county had no right to appropriate money to defray the costs of a justice of the peace who had been prosecuted for official misconduct and acquitted. Judge Bronson, in giving the opinion of the court, compared it to the case of a party indicted for a crime and acquitted on the trial.

"He gets no indemnity from the public treasury." In this case the officers were convicted, but it will scarcely be claimed that they are entitled to any greater consideration on that account.

It was claimed upon the argument that the counsellor of the city was directed to defend the cases in the court for the correction of errors, and should therefore recover for the services rendered under such direction. If the common council had no right to assume the defence of the suits, it is difficult to understand how they could contract a debt for such defence which should be binding upon the city. The counsel must be deemed to have acted with full knowledge of the facts, and it was his duty to have advised them that they were exceeding their powers. Had he done so, it is not probable that they would still have insisted on his defending the suits. Again; the drafts covered the whole costs; and there was no proof of the worth of the services after the defence was assumed by the common council. But I am satisfied that the common council had no authority to assume the defence of the suits, or the payment of either the penalties or the costs.

The judgment of the supreme court should therefore be affirmed.

BRONSON, Ch. J., RUGGLES, J., and HARRIS, J., dissented.

Judgment affirmed.