## BLACK *v.* COMMON COUNCIL OF DETROIT.

1. MUNICIPAL CORPORATIONS—APPROPRIATIONS BY COUNCIL — OB-
JECTIONS OF TAXPAYER—LACHES.

Actual notice or knowledge of an unlawful appropriation of
public moneys by the common·council of a city is necessary
to deprive a taxpayer, on the ground of laches, of the right to
object.

2. SAME—COUNCIL PROCEEDINGS—PUBLICATION—NOTICE.

The publication of the council proceedings embodying the
resolution by which the appropriation was directed, unless
brought to the attention of the taxpayer, would not consti-
tute such notice.

3. SAME—ILLEGAL EXPENDITURE—BILL TO ENJOIN—LACHES.

Delay in filing a bill to enjoin an alleged illegal expenditure
of public funds, for four days after notice of the threatened
action, does not constitute laches.

4. SAME—ENTERTAINMENT OF GUESTS—GENERAL POWERS.

The charter of a city must contain an express grant of
authority to expend money for the entertainment of guests to
make lawful an appropriation of the public funds for that
purpose, such an expenditure not being within the scope of
general municipal powers.

5. SAME—APPLICATION OF CREDITS.

A provision in a charter authorizing the common council
to credit all moneys not raised or received for the purpose. of
any particular fund to "such fund as it shall direct" will
not justify such an application of moneys as would operate
to increase a particular fund beyond the express limitations
of the charter.

6. SAME—ULTRA VIRES CONTRACT.

A city whose power is limited by the charter to raise a
specified amount in each year for the purpose of entertain-
ment has no power to enter into a contract to expend any
greater amount, and is not liable for any greater amount,
although it has had the use of supplies furnished under such
a contract, as the contractor is presumed to know the limita-
tions upon the power of the council.

Appeal from Wayne; Frazer, J.  Submitted January
27, 1899.  Decided March 23, 1899.

Bill by Clarence A. Black and others, taxpayers of the city of Detroit, against the common council of said city and others, to enjoin an expenditure of public moneys. From a decree for complainants, defendants appeal. Affirmed.

*Warner, Codd & Warner* and *Walker & Spalding* (*C. A. Kent,* of counsel), for complainants.

*Charles Flowers* (*John J. Speed,* of counsel), for defendants.

LONG, J.   This bill was filed by Clarence A. Black and 13 other citizens and taxpayers of the city of Detroit against the common council, the controller, and the treasurer of the city, to restrain them from using or expending the sum of $5,000, which the common council of the city, by resolution, directed to be paid into the entertainment fund from and out of the general fund.   The charter of the city (compilation of 1893), by section 222, provides that the common council shall have power to annually levy, assess, and collect, on the assessed value of all real and personal property of the city made taxable by the laws of this State, a sum not exceeding $2,000, for the purpose of defraying the expenses of receptions, entertainments, and celebrations, to be expended from time to time therefor in such manner as the common council shall by resolution direct.   On April 19, 1898, by resolution of the council, the gross sum of $3,304,247.31 was adopted as the estimate for the year 1898, to be assessed and collected to defray the expenditures of the several funds for the year ending June 30, 1899.   This gross fund embraced the sum of $2,000 for the fund known as the "Public Entertainment Fund," and this sum is the only amount allowed by the estimators of the city and the common council for public entertainments for such fiscal year.

The city moneys are, under the charter, divided into specific funds, each of which is to be applied to specific purposes, and no other.   The transfer of money

from one fund to another is prohibited.   It appears, however, that, before these moneys were transferred to the entertainment fund, the city had paid from its general fund, for gas used by the county of Wayne in the county offices, about $40,000, for which it made claim against the county, and which claim was finally adjusted at $20,-000.   On July 12, 1898, there remained an unpaid balance of $5,000 on this claim; and on that day the common council, by resolution, directed the controller, upon collecting that sum, to credit it to the public entertainment fund, for use in entertaining the League of American Municipalities in August following.   This sum was paid to the controller, and transferred by him to that fund, and it is admitted that it was the intention of the city and the other defendants to use this money for the purposes directed by the resolution of the council.   The convention of this league was to commence on August 2d, and upon August 1st this bill was filed, and a temporary injunction issued, restraining the use of this $5,000 for that purpose. One Thomas J. Smith, who had supplied $1,000 worth of fireworks to entertain the league, was permitted to intervene as a defendant.   His testimony shows that he had this material in Detroit on July 28th, and that it was used on August 2d, the day after the injunction was granted.   He further testified that when he made his contract, and when he furnished the material, he knew nothing about the condition of the entertainment fund of the city, or about its other funds, and that he knew nothing about any other contracts made by the city for such entertainment.   On the hearing below, the injunction was made permanent.   Defendants appeal.

The answer of the city alleges that, before the filing of the bill, contracts had been entered into with various parties, amounting to $7,000, which were based upon the supposed fact that there was $7,000 lawfully in the entertainment fund, and that said contracts had, for the greater part, been executed.   The answer also alleges that, long before the filing of the bill, the complainants

knew that said contracts were being made and executed, and said expenditures made, and that they willfully permitted them to go on until nearly the full amount of $7,000 had been used or appropriated, before filing their bill of complaint. The facts are not in dispute.

1. Counsel for defendants contend that the complainants were guilty of laches in not filing their bill sooner, as it appears that the common council, as early as July 12th, adopted a resolution ordering the controller to transfer this $5,000 to the entertainment fund, and that 15 days elapsed from that time before defendant Smith had his material on the ground, and 19 days before the bill was filed. It is not claimed that complainants had actual notice of these matters, but counsel contend that, the council proceedings being regularly published, this was sufficient notice. We think, however, that actual notice or knowledge of a proceeding complained of is necessary, to take away the right to object thereto, on the score of laches. Here the complainants moved within 4 days after they had knowledge of the proceedings to expend this fund.

2. Counsel for the city contend that, while there is a limitation in the charter upon the amount to be raised by tax for entertainment purposes, yet the section does give the power to expend money for entertainments, and that authority is found in other sections of the charter to place other moneys to the credit of the entertainment fund. Attention is called to the limitation (section 184) placed upon the power to raise by tax the principal funds of the city, such as the general fund, poor fund, general road fund, and fire commission fund; but counsel say that this limitation is not directed, in terms, to the amount of each fund, but is fixed at 1 per cent. of the taxable property for all the funds named. The contention is, therefore, that this limitation does not limit the amount of the expenditures from these funds, if the moneys therefor may be raised from other sources than taxation. Attention is also called to section 207 of the charter, which provides that all

moneys not raised or received for the purpose of any particular fund shall be credited to the general fund, or such other fund as the common council shall direct.   Therefore it is argued that this $5,000 coming from the county might, under this provision of the charter, be placed in the entertainment fund, and, not being raised by taxation, the council could expend it for such entertainments.

There might be some force in these contentions if expenditures for entertainments were within the scope of general municipal powers; but, unless expressly conferred, there is no such power.   1 Dill. Mun. Corp. (4th Ed.) § 149; *Gregory* v. *City of Bridgeport*, 41 Conn. 76 (19 Am. Rep. 485).   Section 222 of the charter, in effect, empowers the expenditure for entertainments of a sum not exceeding $2,000, which is to be raised by taxation.   There is no other grant of power to expend anything for this purpose.   For this reason, the discretionary power given by section 207, to credit moneys not received for the purpose of any particular fund to such fund as the common council may direct, does not apply.   There being no power to expend more than $2,000 in any one year for such purpose, there is no power to credit moneys in excess of $2,000 to that fund.   While there is a limitation, by the provisions of section 184, on the power to raise money by taxation for the purposes of certain funds, there is no limitation in the charter on the power to expend moneys for the purposes for which those funds are raised, but the power to provide for those purposes is given in general terms by the provisions of chapter 7 of the charter.   The common council, therefore, exceeded its power in placing this $5,000 in the entertainment fund.

3.   Counsel for defendants further contend that, although the common council had no power to place this $5,000 in the entertainment fund, yet defendant Smith having in good faith entered into a contract with the city, and having given his money and property, and the city having had the benefit of the performance of the contract, it is bound to make compensation.   Counsel cite sections 935

and 936 of the fourth edition of Dillon on Municipal Corporations to sustain this contention. The proposition is there laid down that:

"As regards a *bona fide* contractor with the city, who had expended money for its benefit in respect of a matter within the scope of its general powers, the contract would not be *ultra vires*, in the true sense of that term; and the city would be estopped to set up as a defense its own irregularities in the exercise of a power clearly granted to it." 2 Dill. Mun. Corp. (4th Ed.) § 936.

Counsel cite several cases sustaining this proposition, which is undoubtedly well settled. But the expenditure of moneys for such purposes is not within the scope of the general powers of municipalities. Dillon lays down the rule that:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: *First*, those granted in express words; *second*, those necessarily or fairly implied in, or incident to, the powers expressly granted; *third*, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation, the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability not authorized thereby. * * * All acts beyond the scope of the powers granted are void." 1 Dill. Mun. Corp. (4th Ed.) § 89.

The common council of the city of Detroit had no general power to raise money for the purpose of entertainments. Its power was limited by section 222 to raise by taxation $2,000 in each year for that purpose. Not having the power to raise any greater amount, it had no power to enter into contracts to expend any greater amount.

It is said, however, that the city is liable because it has had the use of the supplies which defendant Smith fur-

nished.   But, as said in *Spitzer* v. *Village of Blanchard*, 82 Mich. 246, "the limitation of power upon the common council appears in the public statute, and is presumed to be known by all dealing with corporate authorities."

"Those who deal with the agents of a municipal corporation must take notice of the restrictions in its charter in respect to the powers of the corporation and its agents, and the mode in which such powers may be exercised, and must see to it that the contracts on which they rely are authorized by the charter." *Commercial Bank of Rochester* v. *City of Rochester*, 42 Barb. 488; *McDonald* v. *Mayor, etc., of New York*, 68 N. Y. 23 (23 Am. Rep. 144).

In *Hodges* v. *City of Buffalo*, 2 Denio, 110, the plaintiff insisted that, though the city had no express authority to make the expenditure, yet the claim could be sustained on the ground that, the plaintiff having furnished the entertainment, the corporation had received the consideration, and was bound to pay, although the engagement was made without legal authority.   The court said in that case:

"It is said to be analogous to subsequent ratification by a corporation of the unauthorized act of its agent.   I cannot concur in this view of the case.   The doctrine referred to assumes that the principal had power to confer the requisite authority in the first instance.   It cannot be maintained that a corporation can by a subsequent ratification make good an act of its agent which it could not have directly empowered him to do."

Where the contract is void, the contractor cannot recover of the corporation in any form,—neither under the contract nor *quantum meruit*.   All who deal with a municipal corporation must see that the contract upon which they rely is within its powers.   *Halstead* v. *Mayor, etc., of New York*, 3 N. Y. 430; *Brady* v. *Mayor, etc., of New York*, 20 N. Y. 312, 319; *Cowen* v. *Village of West Troy*, 43 Barb. 48.

The court below was not in error in directing the decree

in favor of complainants, and making the injunction permanent. The decree must be affirmed, with costs.

GRANT, C. J., HOOKER and MOORE, JJ., concurred. MONTGOMERY, J., did not sit.