Argued 3 Dec.; decided 17 Dec., 1900; rehearing denied 21 Jan., 1901.

## GADSBY v. PORTLAND.

[63 Pac. 14.]

MUNICIPAL CORPORATIONS — LIMIT OF TAXING POWER.

1. Under a city charter limiting the rate of taxation, dividing the total amount received from taxes into certain specified funds, and providing that "no other or greater sum shall be appropriated for the purposes above set forth," no money other than that raised for such funds by general taxation can be provided for any of the purposes for which particular funds have been created; so that an ordinance levying a tax for the purpose of increasing one of the designated funds is invalid as an attempt to collect revenue in excess of the charter authority, the full rate of taxation having already been levied.

REVENUE ORDINANCE NOT AN EXERCISE OF THE POLICE POWER.

2. An ordinance intended to raise revenue for the increase of a certain fund, which ordinance is beyond the power of the council to enact as a revenue measure, cannot be sustained on the ground that it is an exercise of the police power.

COLLATERAL PRESUMPTION AS TO PERFORMANCE OF PUBLIC DUTY.

3. In a collateral proceeding courts will conclusively presume that public officers, such as assessors, for example, have performed their duties in the manner and to the extent required by law.

VEHICLE TAX — EXERCISE OF MUNICIPAL TAXING POWER.*

4. Portland city ordinance No. 11733, imposing a tax on vehicles, and providing that the sum so raised shall be used for the repair of streets, being invalid, as an attempt to raise revenue for the streets additional to that authorized by the city charter, cannot be sustained on the ground that, though invalid in such regard, the revenue might be collected and placed in the general fund; the title of the ordinance declaring its purpose to be to raise revenue for the repair of streets.

From Multnomah: JOHN B. CLELAND, Judge.

Suit by William Gadsby and others against the City of Portland and others. From a judgment in favor of plaintiffs, defendants appeal.                        ·          AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Joel M. Long,* City Attorney.

For respondents there was a brief over the name of *Fenton & Muir,* with an oral argument by *Mr. William D. Fenton.*

MR. JUSTICE WOLVERTON delivered the opinion.

This suit was instituted by nearly 200 merchants, firms, and corporations engaged in business of various kinds in the City of Portland, who refused to pay the license fees or taxes required by Ordinance No. 11736, upon wagons, hacks, and other vehicles used by them in connection with their business enterprises, and its purpose is to enjoin the collection thereof. The ordinance in question is entitled "An ordinance licensing, taxing, and regulating, for the purpose of city revenue, all vehicles of any description whatsoever, in use in, upon, or through any of the streets within the limits of the City of Portland." Section 8 thereof provides that "all moneys derived from license taxes under the pro-

---

*NOTE.—License Fee for the Use of Streets by Vehicles. See note to *Tomlinson* v. *City of Indianapolis,* 36 L. R. A. 413, 416. On the same subject read *City of Chicago* v. *Collins,* 67 Am. St. Rep. 224, 232, 49 L. R. A. 408.—REPORTER.

visions of this ordinance shall be placed to the credit of the fund for the repair of streets and bridges, and the auditor and treasurer are hereby authorized and directed to make the entries upon the books of both departments in accordance with this section." It is alleged, among other things, and conceded, that the common council of the City of Portland has for the current year caused to be levied the full eight-mill tax, or maximum amount authorized by the city charter, upon all the taxable property, both real and personal, within the city; that this tax has been paid in full by the plaintiffs; and that the common council will be compelled to make a like levy for the ensuing year. The validity of the ordinance is challenged upon the ground that it is an attempt to provide revenue for a specific purpose in excess of the amount authorized by the charter to be expended for such purpose, and constitutes the only question which we deem it necessary to consider at this time, as it is decisive of the case.

The city charter provides (Laws 1898, p. 109) : "The council has power and authority within the City of Portland : (1) To assess, levy and collect taxes for general municipal purposes not to exceed eight mills upon the dollar upon all property, both real and personal, which is taxable by law for city and county purposes. And when the council shall have made their estimate and declared the necessary amount of money to be raised by general taxation, as provided in section 51 of this act, they shall by said ordinance set apart not to exceed one and one-half mills for lighting the streets of the city; not to exceed two mills for the fire department of said city, and not to exceed one and three-fourths mills for the maintenance of the police department; and shall appropriate and set apart one-fourth of one mill on the dollar on the assessed valuation of all property liable to assessment and taxation, which shall constitute funds, respectively, for the fire department, police department, lighting department, and the repair of streets, and shall not be used for any other

purposes whatsoever; and that no part of the said funds so specially appropriated shall be used for any other purpose, nor shall said funds so appropriated be a part of the general fund of the said city, against which fund warrants may be drawn for any other than the maintenance of the specific departments for which the fund is appropriated; and no other or greater sum shall be appropriated for the purpose above set forth, and the remaining two and one-half mills hereby authorized to be levied shall be set apart and used exclusively to pay the interest on the bonded indebtedness of the City of Portland": Section 32, Subd. 1. Section 51, alluded to, provides that on or before December 31 of each year the several officers, commissions, or departments of the city shall prepare and file an estimate of the expense for the ensuing year for their respective departments, and that thereupon the council shall, by ordinance, estimate and declare the necessary amount of money to be raised by general taxation, and levy the necessary tax therefor.

The charter elsewhere provides (section 71) that the police commissioners shall on the first day of January of each year report to the common council the estimated amount of salaries and other necessary expenses of the police department for the ensuing year, and the council shall make an appropriation not to exceed one and three-fourths mills on the dollar upon all taxable property within the city, to meet the expenses of the department, and pay the same monthly as other accounts are paid out of the city treasury. Section 94 requires that the board of fire commissioners shall, on the first day of January of each year, or as soon thereafter as practicable, report to the common council the estimated amount of salaries and other necessary expenses for the fire department for the ensuing year, and that the council shall make an appropriation not exceeding two mills on the dollar upon all the taxable property within said city to meet the same, and, to the extent that the tax levied on said property

is collected, the sum so raised shall be used to meet the expenses of said department.  Section 175, subd. 1, provides that the amount expended in any one year for lighting the streets of the city shall not exceed one and one-half mills upon the dollar of all the taxable property within the city. Section 159, that the common council may repair any street, or any part of a street, and declare by ordinance whether the cost thereof shall be assessed upon the adjacent property or paid out of the general fund of the city.  Temporary repairs may be made under the direction of the board of public works whenever the said board deems the same necessary, and the expense therof shall be paid out of the fund raised for the repair of streets.  Section 160 provides that, if the council declares that a proposed repair shall be made at the cost of the adjacent property, the repair shall be deemed an improvement, and made accordingly; but if it declares that the cost of the same shall be paid out of the general fund, it shall be deemed a temporary repair, be made as the ordinance may provide, and be paid for accordingly.  And section 217 directs that at the first meeting of the common council in the month of January, annually, the auditor shall submit a statement, prepared by him, of the estimated amount of revenues for the current year, to be derived from taxes, licenses, and all other sources, and the common council shall be limited in its expenditures to be made for all purposes during the year to the aggregate amount of such estimated revenues. At the first meeting in each month the common council shall provide for the payment of all liabilities of the city incurred during the preceding month or at any time prior thereto, excepting that the payment of interest and other fixed charges shall be made as the same matures, in accordance with the terms of the contract under which such payments are to be made.  From the estimated revenues hereinbefore mentioned there shall be deducted the annual interest charge against the city, the appropriations made for the police and fire de-

partments, and all other fixed charges, so that no greater proportion of the estimated revenues of the year shall be expended in the payment of the liabilities and obligations of said city in any one month than one-twelfth part of the remainder thereof. No money shall be expended or payment made by the city except in pursuance of a specific appropriation made by ordinance for that purpose, and an ordinance making an appropriation of money must not contain a provision on any other subject. No liability shall be incurred, debt created, or contract made, involving the expenditure of money, approved by the council, during any year, which exceeds the amount of revenues received for that year.

These comprehend about all the sections and clauses of the charter that have any particular bearing upon the present controversy. When construed in *pari materia,* as it was, no doubt, intended they should be, they indicate a legislative purpose of providing four several, separate, and distinct funds, to be set apart and used as therby directed, which funds are all limited by the charter with a view to keeping the expenditures of the several departments within the bounds thereby prescribed. The remaining two and one-half mills constitute the fifth fund, but it does not appear to have been limited and restricted in amount, or otherwise, except that it shall be used exclusively to pay the interest on the bonded indebtedness of the city. As we have seen, section 32, subd. 1, requires that the common council shall set apart by ordinance not to exceed one and one-half mills for lighting streets, two mills for the fire department, one and three-fourths mills for the police department, and appropriate and set apart one-fourth of one mill on the dollar, which shall constitute a fund for the repair of streets, and that no other or greater sum shall be appropriated for the purposes named. This latter limitation, however, does not apply to the interest fund. Section 71 also requires that an appropriation not exceeding one and three-fourths mills on the

dollar shall be made to meet the expenses of the police department, and section 94 contains almost the identical provision with reference to the fire department.   Section 175, subd. 1, expressly circumscribes the authority of the common council to the expenditure of one and one-half mills on the dollar of the taxable property in any one year for street-lighting purposes; and sections 159 and 160, while not so explicit, are just as effective to confine the expenditure for the repair of streets to one-fourth of one mill on the dollar of the taxable property of the city.   Section 159 authorizes the council, whenever it deems it expedient, to declare by ordinance whether the cost of a repair shall be paid out of the general fund; but this must be read in the light of the subsequent clause and section 160.   By the subsequent clause the expense of temporary repairs shall be paid out of the fund raised for the repair of streets; and, by section 160, if the common council declares that the cost shall be paid out of the general fund, such repair (that is, such as is provided for in section 159) shall be deemed a temporary repair, and be paid for accordingly, which necessarily must be out of the street-repair fund, as the latter clause of section 159 requires the cost of a temporary repair to be paid out of that particular fund.   The legislature used the term "general fund," no doubt, to distinguish between the cost to be paid by the adjacent property and that to be paid by the city.   If, however, it was determined that it should be paid by the city, then it was the purpose to confine the city to payment out of the fund for repairing streets.   Section 217 indicates a purpose, also, to limit the city in the amount of its expenditures to the estimated annual revenues; and it is provided that from such revenues shall be deducted the interest charge, the appropriations for the fire and police departments, and other fixed charges, which evidently includes the funds for lighting and repairing streets.   What remains constitutes the

general fund of the city, and of this no greater sum than one-twelfth thereof shall be expended in any month.

1.   The general scheme, therefore, devised by the legislature for conducting and managing the finances of the city, includes the setting apart, among others, of a specific fund, consisting of one-fourth of one mill on the dollar on all taxable property of the city, for the purpose of repairing streets, which cannot be augmented or increased during the year by the city authorities.   In other words, the common council is limited in its expenditures for that purpose to the maximum amount thus prescribed, and any expenditures therefor in excess of the prescribed fund are unauthorized and unwarranted.   An appropriation must be made for the specific purpose, and when made the fund becomes available, and not otherwise.   Such an appropriation has been made for the current year.   Now, the declared purpose of Ordinance 11736 is to raise revenue; and section 8 appropriates the whole of it to the fund for the repair of streets and bridges, thus signifying a clear intention on the part of the common council to supplement or augment the fund for repairing streets beyond the amount as limited by the charter. This, we have seen, it is not authorized to do, and the ordinance is therefore void and inoperative.

2.   It is immaterial whether a license fee imposed under section 32, subd. 3, of the charter, is referable to the taxing or to the police power of the city.   The ordinance in the present case obviously denotes that its specific purpose is to raise revenue, and not only this, but to appropriate the whole of it to a use for which there is a circumscribed fund, which is not permitted to be augmented in any manner when its full quota of the city revenues has been set apart.

3.   We only know of the amount of the taxable property of the city by the assessment roll as returned by the officer intrusted with the duty of making the assessment.   His valuations are conclusive, and whether he has rated the prop-.

erty at 60 or 100 per cent. of its cash value we cannot inquire, but must presume that he has performed his duty and rated it at its true value.

4. It is argued that if section 8 of the ordinance be invalid, as making an appropriation, yet that the ordinance in all other respects may be adjudged to be valid, and that the revenue accruing under it would go into the general fund, and be otherwise disposed of as the city may direct. But the very purpose of the ordinance is to raise revenue for the particular fund named in section 8 thereof, and to so hold would be to subvert the specific intention of the common council, which we cannot do, under any rules of interpretation known to the law. In support of this construction of the charter and the ordinance in question, see *Chamberlain* v. *City of Tampa,* 40 Fla. 74 (23 South. 572) ; *Black* v. *Common Council,* 119 Mich. 571 (78 N. W. 660). It follows that there must be an affirmance of the decree of the court below, and it is so ordered.        AFFIRMED.

Decided 17 December, 1900.