*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RODNEY WOODS, doing business as RODNEY
WOODS BUILDER,

UNPUBLISHED
January 7, 2021

Plaintiff-Appellant,

v

No. 344025
Saginaw Circuit Court
LC No. 16-029129-CB

CITY OF SAGINAW,

Defendant-Appellee.

ON REMAND

Before: REDFORD, P.J., and JANSEN and LETICA, JJ.

PER CURIAM.

In an order dated October 21, 2020, the Michigan Supreme Court reversed, in part, the portion of this Court's prior opinion in *Woods v City of Saginaw*, unpublished per curiam opinion of the Court of Appeals, issued October 15, 2019 (Docket No. 344025) (*Woods I*), where we held that "the trial court properly granted summary disposition of the plaintiff's quantum meruit claim under MCR 2.116(C)(8)." *Woods v City of Saginaw*, ___ Mich ___; 949 NW2d 456 (2020) (*Woods II*). Our Supreme Court further held that:

> The plaintiff's amended complaint and attached exhibits were legally sufficient to plead his claim that the defendant was unjustly enriched by extra-contractual work completed by the plaintiff. See *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019); *Wright v Genesee County*, 504 Mich 410; 934 NW2d 805 (2019). Moreover, the Court of Appeals clearly erred by engaging in appellate fact-finding when it stated that the plaintiff had been "fairly compensated." We REMAND this case to the Court of Appeals for consideration of the plaintiff's arguments regarding the trial court's alternative ruling that granted summary disposition to the defendant under MCR 2.116(C)(10). The plaintiff's motion to disqualify the trial judge is DENIED, without prejudice to the plaintiff seeking such relief on remand. In all other respects, leave to appeal is DENIED,

-1-

because we are not persuaded that the remaining question presented should be reviewed by this Court. [*Woods II*, __ Mich ___.]

Accordingly, we now consider whether defendant, the City of Saginaw, was entitled to summary disposition under MCR 2.116(C)(10). Again, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In *Woods I*, we previously articulated that:

This case involved blight demolition efforts in the Saginaw area under the Troubled Asset Relief Program ("TARP"). Defendant and the Saginaw County Land Bank Authority ("SCLBA") secured over $11,000,000 in TARP funds from the Michigan State Housing Development Authority for blight elimination. Defendant and the SCLBA entered into a partnership to demolish up to 950 blighted properties. The SCLBA would be responsible for acquiring, owning, and maintaining properties slated for demolition, and defendant would be responsible for hiring demolition contractors and overseeing their work. In 2013, defendant began soliciting bids from numerous demolition contractors to take on the role of demolishing the blighted properties. One of these contractors was plaintiff, a sole proprietor.

Defendant created a procedure in which each contractor submitted a "per unit costs" for various services related to demolition. Such services included foundation removal, tree removal, and asbestos removal. Each of these services was assigned a particular number of points. Defendant would award demolition work to the "highest qualified contractor with the lowest accepted and approved bids" for a period of two years, and defendant had the option to extend this period for a third year. . . .

Plaintiff submitted his bid proposal and "won" the bidding process. As the highest ranked contractor, plaintiff had first pick of the demolition properties and received 240 out of a total 480 initial properties. In total, plaintiff demolished approximately 600 houses over the life of the contract. . . .

Plaintiff filed a three-count complaint. In Count I, a breach of contract claim, plaintiff claimed that defendant increased the scope of the contract, and then was not adequately compensated for the extra work performed. In Count II, plaintiff sought relief under a quantum meruit theory for the extra work performed. The extra work relevant to Count I and Count II was primarily related to grading and seeding of the properties after demolition, which plaintiff claimed was not included in the parties' original contract. In support of his claim for additional compensation, plaintiff attached a letter from John C. Stemple, Chief Inspector for defendant, in which Stemple issued a change order acknowledging that plaintiff, and other contractors, had been performing work beyond the original contract and would receive additional compensation for prospective demolitions. Finally, in Count III, plaintiff made a second claim for breach of contract, this time claiming

that defendant allocated demolitions to other contractors, thereby breaching an implied covenant of good faith.

> Defendant filed its first motion for summary disposition in October 2017, which the trial court granted in part as to Count I, and denied in part as to Count II and Count III. . . .

> In March 2018, defendant filed a renewed motion for summary disposition of Count II and Count III. The trial court granted summary disposition in favor of defendant of Count II, plaintiff's quantum meruit claim, under MCR 2.116(C)(8) and (C)(10), and of Count III under MCR 2.116(C)(10) for the implied warranty of good faith claim. [*Woods I*, unpub op at 1-2.]

Plaintiff appealed to this Court, and we affirmed. *Woods I*, unpub op at 1. Plaintiff again appealed to our Supreme Court, and our Supreme Court reversed in part, concluding that the trial court erroneously granted summary disposition of Count II under MCR 2.116(C)(8), and remanded this matter back to this Court with the instructions to further evaluate whether defendant was entitled to summary disposition of plaintiff's quantum meruit claim under MCR 2.116(C)(10). *Woods II*, ___ Mich ___. Additionally, our Supreme Court again affirmed the trial court's dismissal of plaintiff's implied warranty of good faith claim under MCL 2.116(C)(10). *Id.*

## II. STANDARD OF REVIEW

On remand, we now consider whether defendant was entitled to summary disposition of plaintiff's quantum meruit claim under MCR 2.116(C)(10). A trial court's ruling regarding a motion for summary disposition is reviewed de novo. *Heaton v Benton Constr Co*, 286 Mich App 528, 531; 780 NW2d 618 (2009).

> A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013) (quotations marks and citations omitted).]

"Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016). "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008). However, "this Court's review is limited to review of the evidence properly presented to the trial court." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 380; 775 NW2d 618 (2009).

The moving party bears the initial burden of production, which may be satisfied "in one of two ways." *Quinto v Cross & Peters Co*, 451 Mich 358, 361; 547 NW2d 314 (1996). "First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* at 362 (quotation marks and citation omitted). Once the moving party satisfies its burden in one of those two ways, "[t]he burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id.*

## III. ANALYSIS

Although the trial court erroneously granted summary disposition of plaintiff's quantum meruit claim under MCR 2.116(C)(8), we conclude that there were two distinct basis to grant summary disposition in favor of defendants under MCR 2.116(C)(10).

## A. EXISTENCE OF AN EXPRESS CONTRACT COVERING THE SAME SUBJECT MATTER

As we noted in our prior opinion:

> "The theory underlying quantum meruit recovery is that the law will imply a contract in order to prevent unjust enrichment when one party inequitably receives and retains a benefit from another." [*Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 194; 729 NW2d 898 (2006).] However, a party may not recover in quantum meruit if an express contract between the parties covers the same subject matter. *Id.*

> In this case, plaintiff seeks additional compensation for extra work performed. Plaintiff relies heavily on the change order from Stemple to support his claim that he should receive additional compensation for extra work performed on demolition jobs before the change order was issued. However, *based on the record before us*, the change order only applied to prospective demolitions; it was not to have retroactive effect. [*Woods I*, unpub op at 3-4.]

Examining each of the specific claims contained within plaintiff's complaint, we conclude that the contract undoubtedly covered the alleged extra work. In his amended complaint, plaintiff alleged the extra work performed was:

> (1) prompt backfilling of soil following a structural demolition, (2) bringing in, at the contractor's expense, a minimum of three inches of fresh topsoil, (3) uniformly grading all surfaces; (4) excavating surfaces to encourage water runoff, and (5) seeding the topsoil with clover and watering, if necessary.

Additionally, the contract provided: "Upon removal of below grade materials all excavations and cavities in the earth shall be filled with clean yellow sand or clay materials and covered with a minimum, after compaction, of four inches organic top soil approved in advance by the Chief

Inspector." Included in this contractual obligation was (1) backfilling of soil and (2) bringing in fresh topsoil, as alleged in plaintiff's complaint.

The contract further provided:

> In some cases the contractor may be directed by the City of Saginaw to prepare the site for the application of grass seed and apply seed. The site shall be graded smooth and seed applied using the hydro-seed method of application. Application shall be made in accordance with the seed supplier's recommendations. Grass seed shall be of a type that does not grow more than six inches in height and shall be acceptable to the City for this application. The cost of this service shall be determined on a cost per square foot basis.

This covered (3) the grading of all surfaces, (4) excavating surfaces to encourage water runoff, and (5) seeding the topsoil with clover and watering alleged in plaintiff's complaint. Moreover, the bid included plaintiff's proposed costs for a number of services, which explicitly included "Lot Grading and Seeding." Therefore, we conclude that the alleged extra work was explicitly covered by the contract.

In short, because the relevant contents of the parties' contractual agreement are undisputed, there is no genuine issue of material fact for resolution at trial. See *Calhoun Co v Blue Cross Blue Shield Mich*, 297 Mich App 1, 12; 824 NW2d 202 (2012) ("Construction and interpretation of a contract are questions of law"). As a matter of law, because the parties had a written agreement expressly governing the compensation to which plaintiff was entitled for the demolition work that is the subject of this lawsuit, plaintiff cannot seek additional compensation for such work under a quantum meruit theory. See *Morris Pumps*, 273 Mich App at 194, quoting *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003) ("a contract will be implied only if there is no express contract covering the same subject matter"). See also *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005) ("the judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties").

## B. THE CITY CHARTER

Additionally, the City Charter prevents plaintiff from recovering under a quantum meruit theory. Defendant's Charter contains a section relevant to this appeal, Section 33, which provides:

> Competitive bids for all purchases and public improvements shall be obtained where practicable and contracts awarded to the lowest and best bidders. Sealed bids shall be asked for in all transactions involving the expenditure of two thousand dollars ($2,000) or more and the transaction evidenced by written contract submitted to and approved by the council; provided that, in cases where it is clearly to the city's advantage to contract without competitive bidding, the council upon recommendation of the manager may so authorize. Detailed purchasing and contracting procedure shall be established by ordinance. The council may authorize the making of public improvements by day labor.

In granting defendant summary disposition of plaintiff's quantum meruit claim under MCR 2.116(C)(10), the trial court relied on the above-quoted portion of the Charter and, among other authorities, *Black v Common Council of City of Detroit*, 119 Mich 571, 576-577; 78 NW 660 (1899), in which our Supreme Court held:

> Of every municipal corporation, the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, *or incur any liability* not authorized thereby. . . . *All acts* beyond the scope of the powers granted are void.

> \* \* \*

> [A]s said in *Spitzer v. Village of Blanchard*, 82 Mich. [234, 246; 46 NW 400 (1890)], "the limitation of power upon the common council appears in the public statute, and is presumed to be known by all dealing with corporate authorities."

> Those who deal with the agents of municipal corporations must take notice of the restrictions in their charters in respect to the powers of the corporation and its agents, and the mode in which such powers may be exercised, and must see to it that the contracts on which they rely are authorized by the charter.

> In *Hodges v. City of Buffalo*, [2 Denio 110 (NY Sup Ct, 1846)], the plaintiff insisted that, though the city had no express authority to make the expenditure, yet the claim could be satisfied on the ground that, the plaintiff having furnished the entertainment, the corporation had received the consideration, and was bound to pay, although the engagement was made without legal authority. The court said in that case:

> "It is said to be analogous to a subsequent ratification by a corporation of the unauthorized act of its agent. I cannot concur in this view of the case. The doctrine referred to assumes that the principal had power to confer the requisite authority in the first instance. It cannot be maintained that a corporation can by a subsequent ratification make good an act of its agent which it could not have directly empowered him to do."

> Where the contract is void, the contractor cannot recover of the corporation *in any form*,–neither under the contract nor *quantum meruit*. All who deal with a municipal corporation must see that the contract upon which they rely is within its powers. *Halstead v.* [*City of New York*, 3 NY 430 (1850)]; *Brady v.* [*City of New York*, 20 NY 312 (1859)]; *Cowen v. Village of West Troy*, 43 Barb 48 [NY Sup Ct, 1864]. [Some quotation marks and citations omitted; some emphases added.[1]]

---

[1] Notably, neither the formatting nor all of substance of this block quote are accurately reflected on Westlaw—the passage is quoted here as it appears in the official reporter.

Applying *Black* to this case, the trial court reasoned that because it "is undisputed that there is no Council-approved written contract for [plaintiff's] 'extra work' " in this case (i.e., the allegedly uncontracted-for work for which plaintiff sought a recovery in quantum meruit), it followed, as a matter of law, that plaintiff could not recover in quantum meruit. On that basis, the trial court held that defendant was entitled to summary disposition of the quantum meruit claim under MCR 2.116(C)(10).

In this Court, plaintiff argues that *Black* was wrongly decided, contending that it is contrary to "the modern rule that an agent having apparent power can bind its principal." However, plaintiff concedes that he only raised that argument in this Court "for the purpose of issue preservation," and that whether *Black* was wrongly decided "is not a question for this Court to decide[.]" We agree. Under the doctrine of vertical stare decisis, only our Supreme Court has the authority to overrule *Black*, which remains binding on this Court unless and until the Supreme Court does so. See generally *In re AGD*, 327 Mich App 332, 340; 933 NW2d 751 (2019) (discussing vertical stare decisis and noting that until our Supreme Court overrules one of its earlier decisions, "all lower courts and tribunals are bound by that prior decision and must follow it even if they believe that it was wrongly decided or has become obsolete") (quotation marks, citation, and emphasis omitted).

Recognizing that *Black* is both binding on this Court and seemingly fatal to his position, plaintiff argued that *Black* is not dispositive because, in this case, the defendant city "wasn't going to pay any amount of money for demolition services—instead, it was going to procure and contract for such services with the attendant costs being paid wholly by the [Saginaw County] Land Bank," by way of TARP grants. In other words, because the alleged extracontractual work in this case "did not require the expenditure of <u>any</u> City funds, whether raised by tax, grant, or otherwise," plaintiff argued that his claim was not contrary to § 33 of the Charter, unlike the claim at issue in *Black*.

In rejecting that same argument below, the trial court reasoned:

[Plaintiff] has provided no authority for this proposition and, on its face, the Charter does not distinguish between transactions funded by locally raised tax revenues and funds originating elsewhere. Rather, the Charter limitation applies to "all" City transactions involving $2,000 or more. In any event, even assuming the City used none of its own tax revenue but, rather, wholly relied on a state or federal grant, the funds would presumably be the City's upon acceptance of the "grant".

In the end, [plaintiff] is suing the City for upwards of $232,000 of "extra work". For the City to be obligated for such a large expenditure, its Charter requires that "the transaction [be] evidenced by written contract submitted to and approved by the council". It is undisputed that there is no Council-approved written contract for [plaintiff's] "extra work".

We concur with the trial court's analysis fully. "When reviewing the provisions of a home rule city charter, we apply the same rules that we apply to the construction of statutes." *Barrow v City of Detroit Election Comm*, 301 Mich App 404, 413; 836 NW2d 498 (2013). Section 33 of the Charter expressly applies to "all transactions involving the expenditure of two thousand dollars ($2,000) or more[.]" Because nothing in such language is ambiguous, it should be applied as

written.  See *id*. at 414 ("Courts apply unambiguous statutes as written.").  Moreover, § 33 does not specify that it is inapplicable when defendant anticipates that a given expenditure will be paid for by grant funding or any other source of noncity funds.  Therefore, it would be inappropriate to construe the Charter as if it did, in fact, contain such language.  See *Johnson v USA Underwriters*, 328 Mich App 223; 936 NW2d 834 (2019) ("we cannot read into the statute something that is not there").  Finally, as the trial court aptly recognized, plaintiff has not sued the Saginaw County Land Bank here—he has asserted his claims in this action against the defendant city.  In other words, he seeks a judgment that defendant—not the Land Bank—is liable to him in quantum meruit for in excess of $2,000.

On the basis of the foregoing, we conclude that § 33 of the Charter precludes plaintiff from recovering under a quantum meruit theory, and according, defendant was entitled to summary disposition as a matter of law under MCR 2.116(C)(10).

Affirmed.

/s/ James Robert Redford
/s/ Kathleen Jansen
/s/ Anica Letica