GEORGE HOOD & others *vs.* MAYOR AND ALDERMEN OF LYNN & others.

A town has no authority to appropriate money for the celebration of the Fourth of July.

PETITION under *St.* 1847, *c.* 37, filed June 30 1857, by eleven voters and tax-payers of Lynn, for an injunction to restrain the respondents from paying money from the city treasury under

the following vote passed on the 29th of June by the board of aldermen and common council of that city:

" Ordered, that his honor the mayor and aldermen Holmes and Stacey, with such as the council see fit to join, be a joint special committee whose duty it shall be to procure a display of fireworks on the night of the Fourth of July next; and that the sum of five hundred dollars, to be taken from the contingen fund, be and the same is hereby appropriated for the purpose of defraying the expenses thereof."

The citation was served on the respondents on the 1st of July 1857; and it was agreed that afterwards the sum of $312.50 was paid for expenses incurred under said vote, by the city treasurer on the warrant of the mayor, and that the sum of $187.50 remains due therefor.

*W. G. Choate*, for the petitioners.

*D. Peabody*, for the respondents.

BIGELOW, C. J. The nature and extent of the power of towns and cities to appropriate money and incur expenses to be paid out of the funds raised by taxation have often passed under the adjudication of this court. It is therefore unnecessary to discuss the subject at length in the present case. The general principle is well settled that municipal corporations, like other corporations aggregate, can exercise no powers other than those which are conferred on them by the act by which they are created, or such as are necessarily incident to the exercise of their corporate rights, the performance of their corporate duties, and the accomplishment of the purposes for which they are constituted. The observance of this rule, and the steady and firm enforcement of it by courts of justice, are of the highest importance. In no other way can the majority be prevented from an oppressive and reckless use of power, or the minority protected against liability for an illegal and unauthorized expenditure of the public money. It was with a view to furnish a prompt and effective remedy to restrain cities and towns from raising, borrowing, or expending money for purposes not authorized by law, and to enable a minority to guard their rights and interests, when such unlawful acts were threatened or in contem-

plation, that the statute of 1847, *c.* 37, (re-enacted in Gen. Sts. *c.* 18, § 79,) was passed; by which this court has power to interfere summarily on the petition of ten taxable inhabitants, and restrain by injunction, according to the practice of courts of equity, any violation or abuse by a town or city of its legal right and power to pledge its credit or to raise and expend money. It is under this statute that the petitioners in the present case ask for the interference of the court.

It is not pretended by the respondents that the purpose for which they appropriated the money of the city, by the vote set out in the bill, comes within any of the objects enumerated in the statutes for which towns and cities have power to grant and vote money. It is suggested, however, that it may come within the general clause by which they are authorized to raise money for " all other necessary charges." But this language has already received a judicial interpretation, and, under the broadest and most liberal construction which has ever been put upon it, we cannot see how it can be made to embrace an expenditure like that contemplated in the vote passed by the respondents. The appropriation is neither necessary to the exercise of any power expressly granted to the city; nor is it incidental to any right or authority, which, though not expressly granted, has its origin in well settled usage, and is founded upon the necessities, convenience, or even the comfort of the inhabitants. This is the extreme limit of the power of towns and cities to grant money, as settled by repeated adjudications of this court. *Stetson* v. *Kempton,* 13 Mass. 272. *Parsons* v. *Goshen,* 11 Pick. 396. *Willard* v. *Newburyport,* 12 Pick. 227. *Allen* v. *Taunton,* 19 Pick. 485. *Spaulding* v. *Lowell,* 23 Pick. 71. *Anthony* v. *Adams,* 1 Met. 284. Viewed in the most favorable light for the respondents, their vote authorized an expenditure of public money to celebrate the anniversary of a great event of national and historical interest, in a manner which might serve to amuse the inhabitants, and perhaps excite in their minds a spirit of patriotism and a love of liberty. But these objects, however laudable, do not come within the range of municipal powers and duties. If money in the treasury of a city can be expended to commem-

orate one event of interest and importance in the history of the country, so it may be to celebrate the anniversary of any and every other. But this court has already decided that a town cannot lawfully appropriate money to commemorate the surrender of Cornwallis, the last great act in the series of events which marked the Revolution and consummated the independence of the country. *Tash* v. *Adams*, 10 Cush. 252.

Nor would there be any limit to the amount of money which might be expended for such purpose, nor to the mode in which the expenditure might be made, except that which might be prescribed by the will or caprice of the majority. If fireworks and illuminations can be permitted, so may dinners, balls and fêtes of every description. It is obvious that such a power would open a door for great abuses, and expenditures of the most wasteful character.

It was urged by the counsel for the respondents that the appropriation in the present case might be justified and sustained on the ground of usage. But the answer to this argument is twofold. In the first place, there is no evidence in the case of the existence of any such usage or custom in the towns or cities of this commonwealth. It is not even alleged in the answer of the respondents. Certainly the court cannot take judicial cognizance of it. But even if such usage was alleged and proved, it would not alter the case. An unlawful expenditure of the money of a town cannot be rendered valid by usage, however long continued. Abuses of power and violations of right derive no sanction from time or custom. A casual or occasional exercise of a power by one or a few towns will not constitute a usage. It must not only be general, reasonable and of long continuance, but, what is more important, it must also be a custom necessary to the exercise of some corporate power, or the enjoyment of some corporate right, or which contributes essentially to the necessities and convenience of the inhabitants. The usage relied on in the present case, if established, would not satisfy either of these last named requisites, which are necessary to give it validity. It was said by this court, in a recent case, that there are many things in the man-

agement of town affairs, which are done without objection and pass by general consent, which cannot, when objection is made and they are brought to the test of judicial investigation, be supported as strictly legal. *Sikes* v. *Hatfield*, 13 Gray, 353. The present case is an illustration of the truth of this remark.

The petitioners were guilty of no laches in commencing these proceedings. They made their application to the court seasonably, and the respondents had ample notice that their proceedings were called in question, and that the validity of their vote was to be brought to the test of judicial inquiry. The respondents therefore went on at their peril; and if they have expended the money of the city for an unlawful purpose, they must take the consequences of their own wrongful act.

*Injunction made perpetual*