WILLIAM JAY SCHIEFFELIN, Plaintiff, *v.* JOHN F. HYLAN, as Mayor of the City of New York, and Others, Defendants.

Supreme Court, New York Special Term, March, 1923.

New York city — appropriation to celebrate twenty-fifth anniversary of greater city is unauthorized — injunction restraining issuance of a bond issue.

The celebration of the twenty-fifth anniversary of the creation of Greater New York does not come within the range of municipal powers and duties, and the city cannot legally defray the cost of the commemoration of that event out of city funds.

In a taxpayer's action to restrain the officials of the city from proceeding to put into effect their announced and conceded intention, in addition to an appropriation of $100,000 in the city budget for 1923, to issue $400,000 of special revenue bonds with which to defray the expenses of the proposed celebration, the plaintiff will be granted an injunction *pendente lite* to restrain such bond issue.

APPLICATION for preliminary injunction.

*Leonard M. Wallstein,* for plaintiff.

*George P. Nicholson,* corporation counsel, for defendants.

MULLAN, J. In this taxpayer's action the plaintiff applies for a preliminary injunction restraining the responsible officials of the city of New York from proceeding to put into effect their announced and conceded intention to issue $400,000 of special revenue bonds with which (in addition to an appropriation of $100,000 in the city budget for 1923) to defray the expenses of a proposed celebration of the twenty-fifth anniversary of the creation of Greater New York. I shall not refer at any length, or in considerable detail, to the plan and scope of the proposed celebration. The curious may find the complete statement of tentative particulars in the printed minutes of the meeting of the board of aldermen held on March 23, 1923. It is necessary, however, to disclose enough of the plan to reveal the general character of the enterprise. It is called in places an "exposition," and in other places it is referred to as a "jubilee." The Grand Central Palace is to be hired at a rental of $50,000. The growth of the city and the achievements of the city government, during the past quarter century, are to be shown

by means of charts, floats and other devices. Halls are to be hired for dancing and various other means of furnishing entertainment are to be provided. For the entertainment of distinguished guests (" entertainment and hospitality; banquets, including music and entertainment; hotel expenses; automobiles; badges; tours of the city; souvenirs, menus," etc.) the sum of $35,000 is to be expended. Medals (some of silver and some of silver metal) are to be given to city officials and guests, at a cost of $25,000. The sum of $20,000 is to be expended for fireworks. Features (" an electric fountain," etc.) are to cost $10,000. A like sum is to be expended for decorations. There are to be athletic games, with music, at a cost of $20,000. Models (presumably of buildings or other structures) are to cost $10,000. Amplifiers for the broadcasting of speeches, etc., are to be hired at a cost of $4,500. Booths in the Grand Central Palace are to be erected at a cost of $25,000. Advertising is to cost $16,500. Departmental exhibits are to cost $100,000. The estimated cost of printing and photography is $47,500. This item includes " books of the exposition," some to be " sold for 25 cents, and many to be given away to city officials." The photography is to be on an extensive scale, portraying the leading city officials. The photographs of the aldermen are to be placed in " handsomely gotten up frames." There is to be a " naval and marine display " at a cost of $5,000. Parades and tours of the city are to play conspicuous parts in the ceremonies. Thousands of balloons are to be sent up, but these, it would seem, are to be paid for by merchants desirous of advertising their wares. The sum of $12,500 is allocated to " miscellaneous." Other allocations bring the grand total of estimated expenditure to $493,500. Apparently it is the intention to exempt from public letting all contracts given out in connection with the enterprise. It is not easy accurately to classify the proposed celebration. Probably it is *sui generis.* Although the plan contains certain features that in a limited sense may be said to be educational in character, the notion one gets from a reading of the plan is that the celebration it to be a jubilee, or jubilation, whose dominant note and purpose is to entertain and amuse the inhabitants of the city and their guests from throughout the country. There also appears to be a pervading intention of disclosing to the people of the country generally that the city of New York is an important and fast-growing municipality, properly grateful for the blessings of its recent past, and hopeful of the future. I am unable to regard the celebration as anything more than a gigantic entertainment. Whether such a proposal is the child of folly or was born of wisdom, it is

not for courts of law to say. Such a question must be decided by the courts of voters that sit upon election days. The only question that courts of law may pass upon in this action is whether or not the proposed expenditure of city moneys would be an expenditure of moneys for a city purpose. The law of the case seems to be very plain. The courts of every state in which the question has been raised whether municipal funds may be expended for the celebration of Independence Day have very squarely and unequivocally held that such an expenditure would not be for a lawful municipal purpose. New York, *Hodges* v. *City of Buffalo*, 2 Den. 110; Massachusetts, *Hood* v. *Mayor & Aldermen of Lynn*, 83 Mass. 103; *Gerry* v. *Inhabitants of Stoneham*, Id. 319; *Tash* v. *Adams*, 64 id. 252; Connecticut, *New London* v. *Brainard*, 22 Conn. 552. In Illinois it was held that the city of Chicago could not lawfully appropriate $2,000 for the "entertaining of official visitors." *Law* v. *People*, 87 Ill. 385. In Rhode Island it was held that Newport could not officially entertain, with city funds, the admiral in command of a visiting English fleet. *Austin* v. *Coggeshall*, 12 R. I. 329. In Michigan it was held that the city of Detroit could not entertain with public funds the representatives of the League of American Municipalities. *Black* v. *Common Council of Detroit*, 119 Mich. 571. It has been held unlawful to expend town moneys for the celebration of the surrender of Cornwallis. *Tash* v. *Adams*, *supra*. In our own state it was held that a village could not use village moneys for the entertainment of visiting editors, even though there was an expected payment by way of "editorial puffs." *Gamble* v. *Village of Watkins*, 7 Hun, 448. In *Halstead* v. *Mayor*, 3 N. Y. 430, our Court of Appeals said: "Until the case of *Hodges* v. *The City of Buffalo* (2 Denio, 110) nothing was more frequent than for city authorities to vote largesses and give splendid banquets for objects and purposes having no possible connection with the growth or weal of the body politic, thus subjecting their constituents to unnecessary and oppressive taxation. Since the decision in that case the principle has been more generally recognized and acted upon that these corporations are creatures of limited powers, especially upon the subject of the appropriation of the funds of the people." The text writers on the law of municipal corporations state it as thoroughly established law that celebrating and entertaining are not authorized municipal purposes. Dillon Mun. Corp. (5th ed.) § 309; McQuillan Mun. Corp. § 364; Tiedeman Mun. Corp. § 139. The learned corporation counsel cites no case where the question of celebrations or entertainments was involved, the only case he refers to being *Parsons* v. *Van Wyck*, 56 App. Div. 329, where the question related to the soldiers and sailors monu-

ment, and where, of course, it was held that such a lasting and embellishing memorial could lawfully be erected out of city funds. In all the reported cases that have been cited to me and that I have found, the courts have invariably decided that municipal bodies are without power to spend public moneys in celebrating or in furnishing entertainment. I am, therefore, of the opinion that there is not the least room for doubt that the proposed celebration would not serve a lawful city purpose. Courts are, and should be, extremely loath to interfere with public officials in the performance of their onerous and often ungrateful tasks; but courts must not weakly be swayed from the performance of their duty, not always pleasant, to curb lawlessness that springs from a wholly honest purpose. Within the domain of their authorized functioning, city officials are free from interference by courts. It is their judgment, and theirs alone, that must control. But when they step beyond the bounds of their allotted jurisdictions they divest themselves of legal power, and their acts beyond those bounds have not the sanction of the mandates of the people. As was said by the Supreme Court of Massachusetts in *Hood* v. *Mayor & Aldermen of Lynn, supra,* speaking of the local legislature of the city of Lynn: " Their vote authorized an expenditure of public money to celebrate the anniversary of a great event of national and historical interest, in a manner which might serve to amuse the inhabitants, and perhaps excite in their minds a spirit of patriotism and a love of liberty. But these objects, however laudable, do not come within the range of municipal powers and duties. If money in the treasury of a city can be expended to commemorate one event of interest and importance in the history of the country, so it may be to celebrate the anniversary of any and every other. But this court has already decided that a town cannot lawfully appropriate money to commemorate the surrender of Cornwallis, the last great act in the series of events which marked the Revolution and consummated the independence of the country. (*Tash* v. *Adams,* 10 Cush. 252.) Nor would there by any limit to the amount of money which might be expended for such purpose, nor to the mode in which the expenditure might be made, except that which might be prescribed by the will or caprice of the majority. If fireworks and illuminations can be permitted, so may dinners, balls and fetes of every description. It is obvious that such a power would open a door for great abuses and expenditures of the most wasteful character." The learned corporation counsel refers to a provision of the city charter (§ 39) as impliedly authorizing the defrayal of the cost of the celebration out of city funds. I discern no intention to make so left-handed a grant of power, but it is of no importance what the intention

was, for, even if the state legislature had enacted a statute expressly and unequivocally purporting to grant such power, the statute would be wholly devoid of efficacy. As I pointed out in the *City College* case (*Matter of College of the City of New York* v. *Board of Estimate, etc.*, N. Y. L. J. Feb. 17, 1923), when a given purpose is a city purpose the state legislature is all-powerful in respect of it and can grant, limit or deny power to the city as it pleases, but when a purpose is not a city purpose the state legislature has no more power to permit anything to be done by a city in furtherance of such a purpose than the city itself has to defy the legislature in respect of anything that comes within the scope and purview of a city purpose. N. Y. Const. art. 8, § 10. The corporation counsel refers to the public reception by the city to Admiral Dewey. But the city's right to expend money for that purpose was not challenged. To quote again from *Hood* v. *Mayor & Aldermen of Lynn, supra:* " An unlawful expenditure of the money of a town cannot be rendered valid by usage, however long continued. Abuses of power and violations of right derive no sanction from time or custom. A casual or occasional exercise of a power by one or a few towns will not constitute a usage. * * *، It was said by this court in a recent case, that there are many things in the management of town affairs, which are done without objection and pass by general consent, which cannot, when objection is made and they are brought to the test of judicial investigation, be supported as strictly legal. (*Sikes* v. *Hatfield*, 13 Gray, 347, 353.) " Expenditures under the budgetary appropriation of $100,000 would, of course, be as illegal as if made out of funds derived from the sale of the revenue bonds that are the subject of this action. As, however, the plaintiff has not sought herein to enjoin the defendants in respect of expenditures out of the budgetary appropriation, the order to be made must be limited to directions as to the bond issue. Let the injunction issue. Settle order.

Ordered accordingly.